# Grand Council of Pennsylvania Royal Arcanum *v.* Cornelius.

*Debtor and creditor—Payment.*

Payment of a debt by the real debtor is prima facie an extinguishment of it.

*Equity—Subrogation—Payment.*

There can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all. In such a case payment is extinguishment; nor will subrogation ever be enforced where the equities are equal, or the rights not clear, nor to the prejudice of the legal or equitable rights of others.

A person having bonds of another in his possession fraudulently pledged the bonds to a bank as collateral security for the payment of one of three notes which he had given to the bank. He subsequently died. His executrix offered to buy the note with which the bonds were pledged, but the bank refused to sell it. She then paid the bank the amount of all of the three notes with money which she had collected as executrix, and received all the collaterals. The notes were marked "paid." The collateral pledged with each note was more than sufficient to secure its payment, and the executrix was not required to pay the third note in order to preserve the securities of the estate which were pledged with the other two notes. *Held* (1) that the executrix was not entitled to retain the bonds wrongfully pledged until she was paid the amount which she had expended in payment of the note for which they were pledged; (2) that no right of subrogation arose either from the equity of contribution, or from the equity of exoneration; (3) that the deceased was not only the principal, but the only debtor, and no payment by him, or for him, or in his interest, or that of his estate, could give rise to any claim to the bonds on the part of a person making such payment.

Argued Oct. 22, 1900. Appeal, No. 32, Oct. T., 1900, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1899, No. 2., on verdict for plaintiff in case of the Grand Council of Pennsylvania Royal Arcanum v. Katharine S. Cornelius and Katharine S. Cornelius, Executrix of Charles E. Cornelius, deceased. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Replevin for seven United States bonds of the aggregate value of $2,500. Before McClung, J.

At the trial it appeared that the bonds in controversy were

the property of the plaintiff, but had been in the custody of Charles E. Cornelius before his death, which occurred on October 15, 1898. The bonds were seized by the sheriff in the possession of defendant. Defendant did not give any property bond, and the bonds were delivered to plaintiff. It appeared that Cornelius in his lifetime gave three notes to the People's Savings Bank of Pittsburg, and as security for the third note he fraudulently pledged the bonds in controversy. After his death defendant with moneys of the estate paid off all three of the notes, and received the bonds, but refused to deliver them to plaintiff until she was paid the amount of the third note.

Defendant presented this point:

Counsel for defendant respectfully asks the court to charge the jury that under all the evidence the verdict of the jury should be for the defendant in the sum of $2,000, being the amount of the collateral note for which the bonds in suit were pledged with the Peoples' Savings Bank, with interest from December 12, 1898. *Answer:* Refused. [1]

The court charged as follows:

[I instruct you that under the evidence in the case and under the conceded facts in the case, it is entitled to recover. That is, that the bonds belong to it without payment of this alleged lien of $2,000, and you will, therefore, render a verdict for the plaintiff with nominal damages, that is, a verdict for the plaintiff in the sum of six and one fourth cents.] [2]

Verdict and judgment for plaintiff for six and one fourth cents. Defendant appealed.

*Errors assigned* were above instructions, quoting them.

*Thomas Patterson*, with him *Henry A. Davis*, for appellants. —The Royal Arcanum was not entitled to the bonds except on repayment to the executrix of the amount for which they were pledged and which she had paid in their relief: Bosler v. Exchange Bank, 4 Pa. 32; Jordan v. Sharlock, 84 Pa. 366; Light v. Leininger, 8 Pa. 403; Skiles v. Houston, 110 Pa. 254; Kirkpatrick v. McDonald, 11 Pa. 393; Thompson's App., 22 Pa. 16; Abbott v. Reeves, Buck & Co., 49 Pa. 494; McCormick v. Irwin, 35 Pa. 111; Bender v. George, 92 Pa. 36; Cottrell's

App., 23 Pa. 294; Wright v. Grover & Baker S. M. Co., 82 Pa. 80; Ackerman's App., 106 Pa. 1; Miller's App., 119 Pa. 631.

*James S. Young*, with him *J. A. Langfitt* and *S. U. Trent* for appellee.—The defendant, as executrix, is not entitled to be repaid the amount she paid to the pledgee before parting with the possession to the true owner of the bonds: Cottrell's App., 23 Pa. 294; Keely v. Cassidy, 93 Pa. 318; Wallace Est., 59 Pa. 401; Gring's App., 89 Pa. 336; Wagner v. Elliott, 95 Pa. 487; Zeigler v. Long, 2 Watts, 206; McGinnis's App., 16 Pa. 445; Lloyd v. Galbraith, 32 Pa. 103; Erb's App., 2 P. & W. 296; McCormick v. Irwin, 35 Pa. 111; Bender v. George, 92 Pa. 36; Miller's App., 119 Pa. 620; Fessler v. Hickernell, 82 Pa. 150; Knouf's App., 91 Pa. 78; Budd v. Oliver, 148 Pa. 194; Mosier's App., 56 Pa. 76; Webster & Goldsmith's App., 86 Pa. 409.

The payment of the note was an extinguishment of the debt, as appears from the evidence of the note itself, which is marked paid.

There is no equity in the defendant that would entitle her to subrogation, nor in the creditors of the estate to entitle them through the executrix to the benefit of the doctrine.

Even if there were equity in the defendant, and subrogation were allowed, it would be to the prejudice of the rights of the plaintiff.

The equities in favor of the plaintiff far outweigh any supposed equity in the defendant, or in the creditors who stand in the shoes of Cornelius.

The defendant was a mere volunteer, and paid the debt under no sort of compulsion, and the debt itself was one resting upon Cornelius or his estate and in nowise upon plaintiff.

The creditors are only entitled to the assets of the decedent, not to the property of others in his possession at his death. To restore these bonds to the defendant would be to enrich the estate for the benefit of the creditors at the expense of the owner of the bonds.

OPINION BY MR. JUSTICE FELL, January 7, 1901:

The undisputed facts upon which a verdict was directed for the plaintiff were these: Shortly before his death Charles E.

Cornelius procured three loans from the People's Savings Bank of Pittsburg on his notes with the pledge of collaterals. Each note by its terms made the collateral given with it a pledge for that note, and also for any other indebtedness then existing or which might thereafter be incurred to the bank. The securities pledged with the first and second notes belonged to Cornelius; those pledged with the third note were negotiable United States bonds which were the property of the plaintiff, the Grand Council of the Royal Arcanum, with the custody of which Cornelius had been intrusted, and his use of them was unauthorized. The notes matured after the death of Cornelius, and the defendant, his executrix, with notice of the breach of trust, offered to buy the note with which the bonds were pledged, but the bank refused to sell it. She then paid the bank the amount of all the notes with money which she had collected as executrix, and received all the collaterals. The collateral pledged with each note was more than sufficient to secure its payment, and the defendant was not required to pay the third note in order to preserve the securities of the estate which were pledged with the other notes.

At the trial the defendant claimed the right to retain the bonds until paid the amount which she had expended in payment of the note for which they were pledged. This claim was based on the proposition, that upon the death of Cornelius his estate became a trust fund for distribution among his creditors, whose rights became fixed at the instant of the death of their debtor, and that as the estate is insolvent, equity, in order to preserve the rights of the creditors, will treat the debt as still existing and subrogate the defendant to the same rights the bank had in regard to the bonds.

We see no grounds on which the claim to be subrogated to the rights of the bank can be sustained. The funds of the estate were not used in the purchase of the bonds and did not in any manner enter into them, nor were they used for the purpose of releasing them from the grasp of an innocent holder for value who had a right to retain them. Their release was an incident only of the payment of the debt by one whose duty it was to pay it, and with funds pledged to its payment. True, the payment of the note and the release of the bonds operated to discharge the claim which the plaintiff had against the estate

growing out of the wrongful conversion by Cornelius, and which because of the insolvency of his estate could not have been collected in full; but a payment in discharge of a just debt cannot be recovered back, even though because of a deficiency of assets it be an overpayment, and the creditor receiving the payment will not be required to refund in favor of other creditors: Carson v. McFarland, 2 Rawle, 118; Montgomery's App., 92 Pa. 202; Miller v. Hulme, 126 Pa. 277. There was not a purchase of the note which carried with it a right to the collateral. Payment of a debt by the real debtor is prima facie an extinguishment of it. Moreover this was the actual intention of the parties. The bank refused to sell the note, and it was paid and marked " paid " before it was delivered.

Nor can the right of subrogation arise from the equity of contribution, as in the case of those who are equally liable for the same debt, nor from the equity of exoneration, as in the case of those who are successively liable. The plaintiff had assumed no liability. The object of subrogation is to place a charge where it ought to rest, by compelling the payment of a debt by him who ought in equity to pay it. " In short the doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnify from the fund out of which should have been made the payment which he made : " Sheldon on Subrogation, sec. 11. There can be no right of subrogation in one whose duty it is to pay, or in one claiming under him, against one who is secondarily liable, or, as in this case, not liable at all. In such a case payment is extinguishment. Nor will subrogation ever be enforced where the equities are equal, or the rights not clear, nor to the prejudice of the legal or equitable rights of others. Cornelius was not only the principal but the only debtor, and no payment by him or for him or in his interests or that of his estate could give rise to any claim to the bonds on the part of a person making such payment.

The judgment is affirmed.