## Pennock *versus* Eagles.

102   290
25 SC ³237
102   290
31 SC ³618

1. A legacy is to be taken as contingent or vested, just as the contingency, if any, is annexed to the gift or to the payment of it.

2. Equitable merger or extinguishment of independent rights owned by the same person, is largely a question of intent, actual or presumed, and when no intent is proven or apparent, the principle may or may not be deemed to attach, just as merger is or is not to the interest of the owner of the several and independent rights. ·

3. A testator devised his estate to his four sons, subject to the payment, inter alia, of interest on a legacy of $1800 to his daughter for her life, " which interest is her full legacy ;" and if she die leaving issue said

[Pennock v. Eagles.]

$1800 to be paid by the four sons to such issue, but if she die without issue, said $1800 to be and remain the property of the four sons. One of the sons, John, conveyed his interest in the lands charged with the legacy, and afterwards died, during the lifetime of testator's said daughter. The daughter afterwards died without issue :

*Held,* (1) The said legacy of $1800 vested at the testator's death, not only as to the daughter but as to the four sons, although whether the sons would ever come into the enjoyment of it was contingent upon the death of the daughter without issue.

(2) There was no merger or extinguishment of the sons' vested interest in the legacy, in their title to the land charged therewith ; hence John's interest in the legacy did not pass by his said conveyance of his share of the land so charged.

(3) After the death of the daughter without issue John's representative became entitled, from the owner of the land so charged, to the share of the legacy which John would then have taken if living. ,

February 6th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Chester county :* Of January Term 1882, No. 346.

Amicable action between Mary E. Eagles, and Joseph E. Pennock. The parties submitted the following case stated :—

Nathaniel Pennock, late of New London township, Chester county, deceased, by his will, proven August 14th 1849, gave and devised, amongst other things, as follows :

" I give and devise to my daughter Eleanor Pennock, the sum of eighteen hundred dollars, in manner and form hereinafter specified.

" I give and devise unto my daughter, Lydia Pennock, the sum of two thousand dollars, in manner and form hereinafter specified. . . .

" I give and devise unto my four sons, Levi W. Pennock, Joseph E. Pennock, Lewis P. Pennock and John Pennock as tenants in common, all my real estate situate in the township of New London, aforesaid, and also I give and devise unto my four sons all my personal estate of whatsoever nature and kind the same may be, to hold the same to them, my said sons, as tenants in common, and to their heirs and assigns forever, all my estate, both real and personal, wheresoever the same may be found, subject to the payment of the aforesaid legacies with interest thereon, as hereinafter mentioned, to my two daughters.

" It is my will, and I do hereby direct that the $1,800 hereinbefore willed to my daughter Eleanor Pennock, be and remain a lien on my real estate willed to my four sons, during her natural lifetime, and that lawful interest for the same be paid to her yearly by my said sons, their heirs and assigns, which interest is her full legacy ; the interest to commence in

[Pennock *v.* Eagles.]

one year after my decease, and if she should die leaving lawful issue, the said $1,800 willed to her, shall be paid by my said sons to her said issue; but if she should die without lawful issue, then I direct that the said $1,800 willed by me to her, shall be and remain the property of my four sons, their heirs and assigns forever.

"It is my will, and I hereby direct that the $2,000 hereinbefore willed to my daughter, Lydia Pennock, be and remain a lien on my real estate willed to my four sons. during her natural lifetime, and that lawful interest for the same be paid annually by said four sons, their heirs and assigns, or applied to her necessary wants and support, and in case the said interest is not all needed for her support, the balance shall be and remain the property of my said four sons, and at her decease, I desire that the said $2,000 willed by me to her, shall be and remain the property of my said four sons, their heirs and assigns forever."

The testator appointed said four sons executors of his will.

The said Eleanor Pennock was never married, and never had issue, and died December 14th 1880.

Said four sons made an amicable division of the real estate devised to them as aforesaid, on July 16th 1850. Levi W. Pennock and Lewis P. Pennock, by deed of that date, recorded, &c., in consideration of the said Joseph E. and John Pennock, "covenanting and agreeing to pay and discharge the one equal half part of the principal and interest which is due, or may hereafter become due, of two certain legacies, which are secured upon the above tract" (meaning the tract devised as aforesaid) "by the said will, and to be paid and discharged as said will directs," and the further sum of $329.57, released all their estates, shares, purports and dividends, right, title, interest, property, claim or demand whatsoever, of, in and to ninety-two acres and forty-one perches, of the said devised premises, by metes and bounds, to the said Joseph E. Pennock and John Pennock in fee; and the same day Joseph E. Pennock and John Pennock executed a like release to Levi W. Pennock and Lewis P. Pennock, for the remainder of the said devised premises, recorded in deed book No. 7, page 353, which releases and will are made a part of the case stated.

The said John Pennock and Hannah, his wife, by their deed dated December 8th 1856, and recorded, &c., conveyed in fee to the said Joseph E. Pennock, all their right, title, interest, property, claims and demands, in the said ninety-two acres and forty-one perches, by metes and bounds, the consideration in said deed being therein stated as follows, viz.: "For and in consideration of the said Joseph E. Pennock, covenant-

ing and agreeing to pay and discharge the one full equal half part of the principal and interest, which is due, or may hereafter become due, of two certain legacies which Nathaniel Pennock, in his last will and testament, gave and bequeathed to his daughters, Eleanor and Lydia, and is secured on the real estate of said deceased, and to be paid as said will directs, and for and in consideration of the further sum of $3,200," which deed is also made a part of this case stated.

The interest on said legacy of $1,800 was regularly and annually paid to the said Eleanor Pennock during her life by the said Joseph E. Pennock, since the date of said last mentioned deed, and by the proper parties before that time.

John Pennock, the grantor in said last mentioned deed, died before the said Eleanor Pennock, leaving a widow and one child, the plaintiff in this action. The said widow also died before the said Eleanor Pennock. The said John Pennock has been dead over twenty years.

It is agreed that, for the purposes of this case, the said Mary E. Eagles, plaintiff in this action, shall be entitled to all the right the said John Pennock would, if living, be entitled to, without administration upon his estate.

If the court shall be of opinion that, under the facts herein stated, the estate of the said John Pennock is entitled to receive from the said Joseph E. Pennock, who is still the owner of said tract of ninety-two acres and forty-one perches of land, any portion of the principal sum of said legacy of $1,800, then judgment to be entered for the plaintiff, for such sum, to wit, if of opinion that said estate is entitled to receive the one-fourth of said legacy of $1,800, then judgment to be entered for plaintiff for $450. If of opinion that said estate is entitled to receive the one-eighth of said legacy of $1,800, then judgment to be entered for the plaintiff for $225. If of opinion that said estate is entitled to no portion of said legacy of $1,800, then judgment to be entered for the defendant.

The court, in an opinion filed by FUTHEY, P. J., being of opinion that the legacy remained an existing lien upon the land, entered judgment on the case stated for the plaintiff, for $450, " that being the amount which John, had he been living, would have been entitled to receive from Joseph." The defendant took this writ of error, assigning for error the said judgment for plaintiff on the case stated.

*R. T. Cornwell*, for the plaintiff in error.

*Alfred P. Reid*, for the defendant in error.

Mr. Justice CLARK delivered the opinion of the court, May 7th 1883.

[Pennock *v.* Eagles.]

It does not appear in the case stated what personal estate Nathaniel Pennock was possessed of, at the time of his death. The four sons, Levi, Joseph, Lewis and John, are made the devisees of his entire property in bulk, the realty and personalty are blended, and their actual or relative values not given, whether or not the fund of $3,800, covering the amount of the legacies to his two daughters, was to be found in his personal assets does not appear, nor do we regard the knowledge of that fact to be essential in the determination of this case.    We are of opinion that the testator intended to set apart and establish a distinct fund out of the corpus of his estate, real and personal, to answer the exigencies of his will, in the provision made for his daughters : this fund was necessarily personal estate, even if carved from the realty there would, under the operation of the will, certainly be a conversion to that extent.

We think this intention of the testator is clearly shown by the entire expression of the will.    The bequest to his daughter, Eleanor, is of money, not land, it is charged as a lien against, and not secured as an interest in lands, it is called a legacy, the annual interest, as it accrues, is to be paid to her during her life, and at her death, if she leaves issue, the " legacy " shall be paid to such issue, if she should die without issue however " the $1,800 willed to her " shall be the " property " of the four sons.    The devise to the sons is subject to the " payment " of the aforesaid legacies " with interest thereon."

It seems quite clear that the testator regarded this fund as separated or withdrawn from the balance of his estate, to serve a special purpose of his mind, and that the estate at his death was thus separable into two parts, viz. the $3,800 which was withdrawn from the corpus of his entire estate and charged on the residue for the benefit of his daughters and the residue in the hands of four sons, as devisees.

It is a general rule that a legacy is to be taken as contingent or vested, just as the contingency, if any, is annexed to the gift or to the payment of it.    The legacy to Eleanor vested at the death of the testator, not only as to her, but in the subsequent takers.    It is true that the legacy was subject to the contingency that Eleanor should die without issue.    That contingency, however, it is apparent, did not affect the capacity of the sons to take at her decease, but was an event independent of them, and not affecting their right.    That right presently existed, although its exercise was contingent upon circumstances which were not such as were necessary to qualify them to receive the legacy, but to determine the time, when, if ever, they would come into the enjoyment of it.

The legacy being a vested one, upon the death of John, in the lifetime of Eleanor, his right was transmitted to his personal

[Pennock v. Eagles.]

representatives, and by the case stated, it is agreed that the plaintiff shall be entitled to the rights of her father without administration.

It is urged, however, that as John's right was vested at the death of his father, his subsequent acceptance of the fee, under the will, in common with his brothers, had the effect to merge his right as a legatee in the absolute title or ownership of the land, and that as owner he could not be debtor to himself. The right as legatee was not, as we have seen, an interest in the land, and therefore the doctrine contended for is rather that of a confusion of rights or an extinguishment, than that of technical merger. The principles are however analogous, but applicable to different subjects. " When the hand to pay is the hand to receive, the law will presume payment."

The rights of the sons were rights in remainder by the express terms of the will; they could not sink therefore for their benefit as devisees, as if there had been no remainder over; their claim is fixed by the subsequent portion of the will.

John was not however in any proper sense at his father's death, or at any time afterward his own debtor; his absolute liability to himself had not yet accrued; his right to receive a share in the "property" of Eleanor's legacy was not ascertained until after the conveyance of his title to Joseph, and although he had a vested interest, the contingency upon which his receiving of it depended had not yet happened. He had, it is true, such a right as was transmissible to his legal representatives at his death, but he was not yet his own debtor; that right was not an interest in land; it was personal; it was contingent, and certainly no principle of law could intervene which would hold him to have paid to himself what he had no right to receive, or to have received what he had no right to pay.

The contingent intermediate interest of the issue of Eleanor was an insuperable barrier against the legal extinguishment of the debt: 1 Washburne on Real Property 155 ; 4 Kent's Com. 101 ; Cook v. Brightly, 10 Wright 439 ; McQuigg v. Morton, 3 Wright 43.

Equitable merger is largely a question of intent, actual or presumed, and when no intent is proven or apparent, this principle may or may not be deemed to attach in any given case, just as merger is or is not to the interest of the owner of the several and independent rights: Richards v. Ayre, 1 W. & S. 485. The rule as to extinguishment of debt is analogous: Jones v. Johnson, 3 W. & S. 276. The doctrine is well stated in Forbes v. Moffatt (quoted by defendant in error), 18 Vesey, Jr., 390, by Sir William Grant in the following language : " It is very clear that a person becoming entitled to an estate subject to a charge for his own benefit may, if he chooses, at once

[Pennock *v.* Eagles.]

take the estate and keep up the charge. Upon this subject a court of equity is not guided by the rules of law. It will sometimes hold a charge extinguished, when it would subsist at law, and sometimes preserve it, when at law it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united. In most instances it is with reference to the party himself of no sort of use to have a charge on his own estate, and when that is the case it will be held to sink unless something shall have been done by him to keep it on foot."

Eleanor's legacy of $1,800 was a subsisting and continuous charge upon the land, awaiting the contingency of her death without issue; the sons were bound to keep up this charge for Eleanor's benefit during her life, and for her issue; the value of an undivided interest in the land affected with such a charge was largely depreciated; her age, her health, habits of life, prospects of marriage and consequent probability of issue, were factors in making an estimate, and it is highly improbable that Nathaniel Pennock, the father, at the making of his last will, and testament ever contemplated, much less intended that in the event of the death of any of his sons, or the sale of any of their interests, inquiries of so indelicate a character should affect his daughter, nor can we suppose that John, the brother, intended any such thing. The value of an undivided interest was thus conjectural, and the interest rendered unmarketable. We must assume, therefore, that as it was John's interest, it was his intention that there should be no extinguishment of his claim for his share of the legacy by his acceptance of the title.

But we are not left uninformed as to his actual intention, nor as to the joint intention and understanding of all the sons; the expression of their subsequent conveyance affords the strongest possible proof that they recognized their duty to keep alive this charge and provide for its actual payment with interest upon the footing of the will.

On the 16th day of July 1850, Levi and Lewis Pennock conveyed to John and Joseph Pennock all their right, title, &c., in one moiety of the lands in consideration, inter alia, of the said John and Joseph, " covenanting and agreeing to pay and discharge the one equal half part of the principal and interest which is due or may hereafter become due, of two certain legacies which are secured upon the above tract by the said will, and to be paid and discharged as said will directs." As Eleanor was in full life, the pronoun " which " clearly relates to interest and not to principal; there was of course none of the principal due, the covenant, therefore, was that John and Joseph should pay and discharge one equal half part of the principal and also

one equal half part of the interest, which was due or might become due on said legacy.

On the 8th December 1856, John Pennock conveyed to Joseph S. Pennock all his right, title, &c., in the lands owned by them for a consideration, inter alia, identical in words and form with the consideration expressed in the deed just recited, and thereby Joseph bound himself to pay and discharge one equal half part of the principal and also one equal half part of the interest due or that might become due on said legacies.

From these conveyances it is clear that the sons all contemplated payment of the principal of these legacies as well as of the interest, such is their express covenant each with the others. Not only actual payment of the legacy to Eleanor, but that of Lydia ; but to whom is the principal of Lydia's legacy payable? Not to her issue, but at her death the said $2,000 willed by me to her shall be and remain the property of my sons their heirs and assigns forever.   If, therefore, actual payment of the principal was intended by the testator, and contemplated by the sons, to whom could payment be made other than to the sons or their representatives on the footing of the will.

Nor can we see the force of the argument that the testator's purpose was to vest the whole corpus of the estate including the principal of the legacies of $1,800 and $2,000, in the four sons, subject to the conditional limitation that in case Eleanor should leave issue the $1,800 was to be paid to such issue.   The legacies are first created, and the devise of the land is subject to their payment, with interest ; how the devise can be supposed to include the principal of the legacies we cannot understand, when it is expressly subject to a payment of both principal and interest.   If this had been the intent of the testator he would certainly have said so ; he has, however, gone to much trouble to direct a scheme altogether inconsistent with that suggested, and used terms of expression which preclude the probability of any such intent.

We see, therefore, no error in the judgment of the court below and the judgment is affirmed.