# Hyde et al. *v.* Rainey et al., Appellants.

*Wills—Real estate—Underlying minerals—Severance—Implied severance.*

1. A testator may treat the minerals underlying his real estate as severed from the surface in making a disposition of his property and the intention to do so may be gathered by implication.

*Wills—Construction—Intention—"If"—Ambiguous or incomplete expression—Intention.*

2. The word "if" in a will is frequently construed to mean "when" in order to advance the apparent intention of the testator. Words are not construed as importing a condition if they are fairly capable of another interpretation, and this is particularly true where if the language is construed to import a condition precedent to the taking of the gift, the plain intention of the testator will be defeated.

3. When the form adopted to express the intention is ambiguous or incomplete the intent nevertheless should prevail and in the interpretation of wills this should always be the end sought.

4. An unlimited gift of proceeds vests in the beneficiaries an absolute estate in the corpus from which the proceeds arise.

*Wills—Construction—Intention of testator—Surface—Underlying minerals—Severance—Gifts of proceeds.*

5. A testatrix by an inartificially drawn will devised, in item five, the farm on which she resided to her son Harmon and his children, subject to the payment of certain legacies. By item nine it was provided: "It is my will that if during the period of my natural life if the farm on which I reside shall be leased for the purpose of mining for coal, gas or oil that the proceeds of the lease shall be divided among my four children, share and share alike." The words "if during the period of my natural life" were stricken out at the direction of the testatrix before the publication of the will. *Held,* that the only reasonable inference to be drawn from these provisions is that the testatrix intended by item five to devise the surface of the farm to her son Harmon and by item nine to devise the proceeds of the minerals among her four children, and this is equivalent to a devise of the absolute estate in these minerals to them.

Argued Oct. 12, 1911. Appeal, No. 110, Oct. T., 1911, by defendants, from judgment of C. P. Washington Co., Feb. T., 1910, No. 216, for plaintiff on case stated in case

of Sarah E. Hyde, Lydia A. Bebout, Nancy McGregor, James R. McGregor, Nora McGregor, William McGregor and Elizabeth McGregor v. H. H. Rainey, James H. Rainey and Retta A. Rainey. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Case stated to determine rights and title to the coal, oil and gas in and under a tract of land in Nottingham township. Before TAYLOR, J.

By the case stated it appeared that Jane Rainey died on August 1, 1890, at the age of eighty-one years, leaving a last will and testament made on January 4, 1890.

The fifth item of the will was as follows: "I will and bequeath to my son Hermon H. Rainey all that tract of land situated in Nottingham Township, Washington County, Penna. on which I now reside subject to the above named bequests which he is to pay to my daughters Lydia Bebout and Maria J. McGregor, and One Hundred Dollars to John Dixon will be hereinafter mentioned. The above named farm contains Two Hundred and Twenty acres more or less, together with all the farming implements which I possess, including One Two Horse Wagon, One Four horse wagon and one Spring Wagon, and at the death of my son Harmon H. Rainey the above bequest is to descend to his children."

The sixth item of the will was as follows: "It is my will that ~~if during the period of my natural life~~ if the farm on which I reside shall be leased for the purpose of mining for coal, gas or oil that the proceeds of the lease shall be divided between my four children, viz: Sarah E. Hyde, Lydia A. Bebout, Maria J. McGregor and Harmon H. Rainey, share and share alike."

The tract of land on which the said Jane Rainey lived at the time of the execution of the will, which is referred to in the ninth item of her will, is the same tract of land which was devised to Harmon H. Rainey for life, with remainder to his children, by the fifth item of her will.

This tract of land was never leased during the lifetime of the said Jane Rainey for the purpose of mining for coal, gas or oil, nor has it ever been so leased since her death. No gas nor oil wells were ever drilled upon said property, neither have any coal mines ever been opened upon the same.

The plaintiffs in the case stated were Sarah E. Hyde and Lydia A. Bebout, daughters of Jane Rainey; Nancy Mc-Gregor, James R. McGregor, Nora McGregor, William McGregor and Elizabeth McGregor, sons and daughters of Maria J. McGregor, a daughter of said Jane Rainey, who died intestate before the beginning of this action and subsequent to the death of her mother, the said Jane Rainey. The defendants are H. H. Rainey, son of Jane Rainey and the Harmon H. Rainey named in her will; and James H. Rainey and Retta A. Rainey, children of the said H. H. Rainey.

*Error assigned* was in entering judgment for plaintiffs.

*M. W. Acheson, Jr.*, of *Patterson, Sterrett & Acheson*, with him *Irwin & Wiley*, for appellants, cited on the construction of the term "lease," Denniston v. Haddock, 200 Pa. 426; Blakley v. Marshall, 174 Pa. 425; Gallagher v. Hicks, 216 Pa. 243; Coolbaugh v. Coal Co., 213 Pa. 28.

*John M. Freeman* and *D. T. Watson*, with them *Harry A. Jones, Francis R. Harbison* and *Harry F. Stambaugh*, for appellees.—The intention of the testatrix to give the proceeds of the coal under her farm to her four children equally, is beyond any doubt: Christy v. Christy, 162 Pa. 485; Mulliken v. Earnshaw, 209 Pa. 226; Holbrook's Est., 213 Pa. 93; Dubois v. Ray, 35 N. Y. 162; Chapman v. Cheney, 191 Ill. 574 (61 N. E. Repr. 363).

The condition in the ninth item of the will is one merely of form and not of substance, it does not postpone the vesting of the gift in the four children at the death of the testatrix: Janney v. Sprigg, 7 Gill (Md.), 197; Meehan v.

Brennan, 45 N. Y. Supp. 57; Cahill v. Russell, 140 N. Y.. 402 (35 N. E. Repr. 664); Pits v. Pelham, 1 Levinz, 304; Bentham v. Wiltshire, 4 Madd. Ch. 44; Brown v. Higgs, 8 Ves. Jr. 561; Mifflin's App., 121 Pa. 205; Kiefel v. Keppler, 173 Pa. 181; Keene's Est., 221 Pa. 201; Hanna's App., 31 Pa. 53; McFait's App., 8 Pa. 290; Christy v. Christy, 162 Pa. 485.

The bequest to the four children of the proceeds of the coal, if or when leased, constitutes an unlimited gift of such proceeds, and the four children take a fee in the coal:. Roberts's App., 59 Pa. 70; Beilstein v. Beilstein, 194 Pa. 152; Carlyle v. Cannon, 3 Rawle, 489; Drusadow et al. v. Wilde et al., 63 Pa. 170.

OPINION BY MR. JUSTICE ELKIN, January 2, 1912:

What was the intention of the testatrix as gathered from the four corners of her will? The answer to this question is decisive of the present controversy. Two views are strongly and ably presented, one by appellants and the other by appellees, and each view is well supported by reason and authority. To sustain either view it is necessary to find that it was the intention of the testatrix to so dispose of her property. The testatrix at the time of making the will in question was eighty-one years of age, and she died about seven months after its execution. The will was drawn by a minister of the gospel, who, it is apparent, was not an apt draughtsman. For the purposes of this case only two items of the will need be considered. By item five the farm on which testatrix resided was given to her son Harmon and his children, subject to the payment of certain legacies. Subsequently the testatrix undertook to dispose of the coal, gas and oil underlying the same farm in item nine, which provides: "It is my will that if during the period of my natural life if the farm on which I reside shall be leased for the purpose of mining for coal, gas or oil that the proceeds of the lease shall be divided between my four children viz Sarah E. Hyde, Lydia A. Bebout, Maria J. McGregor and Harmon H. Rainey

share and share alike." In the attestation clause the two subscribing witnesses certify that the words "if during the period of my natural life" were stricken out by the direction of the testatrix before the publication of the will. The farm which is the subject of these devises was not leased for the purpose of mining coal, gas or oil during the life of the testatrix nor at any time since her death. Appellants contend that Harmon H. Rainey and his children under item five of the will took title to the entire tract of land in question,—the coal, oil and gas as well as the surface; while the appellees claim that the testatrix intended to sever the coal, oil and gas from the surface and to give the proceeds share and share alike to the four children named in item nine. For the appellants it is urged that the testatrix meant that the whole title to the farm, surface and minerals, was to be enjoyed by her son Harmon at least for life, and then to descend to his children, unless and until the coal, oil and gas were leased, in which contingency the proceeds of such lease should vest in her four children, but if no such lease were made during the life of testatrix, or could be lawfully made after her death, the whole title vested in those taking under item five. The position of the appellees is that the testatrix had in mind two separate and distinct estates in the farm to which items five and nine relate. In other words, she treated her farm as if there had been an actual severance of the mineral estate from the surface land. Upon this assumption, it is argued, that the testatrix intended to devise the surface to her son Harmon and his children under item five, and the proceeds of the coal, oil and gas to her four children equally under item nine. That there can be a severance of the minerals from the surface so as to create a separate estate in each, is too well settled to need the citation of authorities. This rule is as old as the common law and is of universal application in this country. It adds value to property and makes it possible for the owner of the soil to sell and convey the underlying mineral estate, frequently for a large consideration, while he re-

tains the surface for agricultural and other purposes. Such a beneficial rule of property should not be cut down or impaired by refinements and distinctions intended to defeat rather than widen its scope and purpose. It is true that the severance is generally made by deed or other conveyance, and that until so made, the title to the land is regarded as an entirety including minerals as well as surface. But that the severance can be made by will is not an open question in this state, for it was expressly so decided in Christy v. Christy, 162 Pa. 485. It must therefore be accepted as settled law that the testatrix in the present case had the undoubted legal right to devise the surface of the farm in question to her son Harmon, and the proceeds of the underlying coal to her four children. The real question is, did she do these things? It must be conceded that she did not do so in express words and it is therefore necessary to determine whether her intention to thus dispose of her property appears from the language of her will. Mr. Justice WILLIAMS in discussing the intention of the testator in disposing of the surface and minerals in Christy v. Christy, supra, said, inter alia: "It will be noticed that in the devise to Agnes the reservation of the mineral right appears by implication, while the gift to her of her equal share in its proceeds is in express words. On the other hand, in the devise to Gallitzin the reservation is in express words and the gift of an equal share in the minerals is to be gathered only by implication." In other words, this court there held that although the devise to Agnes was of the farm on which she now resides, there was an implied reservation of the underlying coal because of the qualifying words "should the coal be opened on said land, or sold in a body, she, my daughter Agnes, to have equal share with the other heirs." And as to Gallitzin, while there was an express reservation of the mineral right from the farm devised to him, the gift of an equal share in the minerals was held to arise by implication. This is authority for the rule that the testator may treat the minerals as severed from the surface in

making a disposition of his property and that the intention to do so may be gathered by implication. This brings us to a consideration of the will in the present case. The intention of the testatrix to give the proceeds of the coal under the farm devised to her son Harmon to her four children appears in item nine of her will. We cannot read items five and nine without coming to the conclusion that the testatrix regarded the surface of her farm as having value for agricultural purposes, and the coal, oil and gas underlying the same as an estate having value separate and apart from the surface. She undertook to treat them as two separate estates, but her scrivener did not use apt language in giving expression to her intention, and as a result of this failure to clearly express what the testatrix meant we have here presented a case full of perplexing questions involving title to a valuable mineral estate. As hereinbefore stated, appellants contend that they took the whole title to the farm, surface and minerals, under item five and that the four children were only to take an estate upon condition under item nine, and the condition being unfulfilled during the life of the testatrix and being too remote to be fulfilled thereafter, the gift must fall and the whole estate pass under item five. Such a construction eliminates item nine from the will and entirely defeats whatever intention testatrix had in mind in giving the proceeds of the coal to her four children. The gift of one-fourth of the proceeds of the coal by item nine to her son Harmon cannot by any process of reasoning be reconciled with the contention now made by appellants that she had devised all the coal absolutely to the same son and his children under item five. It is inconceivable that this old lady, more than four score years of age and nearing the end of life, was playing fast and loose with her own children by giving all the coal to her son Harmon in one item of her will and by a subsequent item dividing the proceeds of the same coal equally among her four children including the son Harmon. The only reasonable inference to be drawn from these provisions of the will is that

the testatrix intended by item five to devise the surface of
the farm to her son Harmon, and by item nine to divide
the proceeds of the minerals among her four children.
This is exactly what was done in Christy v. Christy, supra.
We must now consider whether what she intended is to
be defeated because a scrivener, unfamiliar with legal re-
quirements, failed to clearly express her intention. That
the leasing of the coal was not limited to the period of
the natural life of the testatrix clearly appears from the
will itself. The scrivener had so prepared the original
draft of the will, but as appears in the attestation clause
this provision was stricken out by order of the testatrix
before it was finally executed. There could be no more
positive proof that she did not intend the gift of the pro-
ceeds of the coal to her four children to depend upon
a leasing in her lifetime. But with this phrase eliminated
the language is ambiguous and the intention not clearly
expressed. "It is my will that . . . . if the farm on
which I reside shall be leased for coal, gas or oil, that the
proceeds of the lease shall be divided between my four
children," is the final disposition made of the mineral
estate. What did the testatrix mean by this provision
of her will? Did she intend to give the proceeds of the
coal to her four children, if and only if, the coal at some
time shall be leased, or did she intend her four children to
have the proceeds when these minerals shall be leased or
sold? She certainly intended to give the proceeds to her
four children share and share alike, because she says so,
and this according to her scheme was to be done if, mean-
ing when or whenever, the minerals are converted into
proceeds. The word "if" in a will is frequently con-
strued to mean "when" in order to advance the apparent
intention of the testator: 21 Cyc. 1725; 2 Williams on
Executors, 1086. We think that the word "if" was used
in that sense in the present case. Words are not to be con-
strued as importing a condition if they are fairly capable
of another interpretation. In the case at bar the language
used is not only capable of another interpretation, but if

construed to import a condition precedent to the taking of the gift, the plain intention of the testatrix will be defeated and one very important item of her will entirely eliminated.

But it is argued that the proceeds of the coal, gas and oil are only to be enjoyed by the four children named when these minerals are leased, and until there is a leasing nothing passes under item nine of the will. This view looks to the form rather than to the substance of the gift. The testatrix was primarily making a disposition of the proceeds and the method of converting the minerals into proceeds was only incidental to the enjoyment of the gift. It seems to us perfectly clear that the testatrix did not use the word "lease" in any technical sense, and that she 'did not intend to make the enjoyment of the gift depend upon a technical leasing, but that she used this term to indicate a method of converting the minerals into proceeds. When the form adopted to express the intention is ambiguous or incomplete the intent nevertheless should prevail, and in the interpretation of wills this should always be the end sought: Cahill v. Russell, 140 N. Y. 402. We think it was the intention of the testatrix to give the proceeds of the minerals to her four children, and in order to carry out this intention the power to sell or lease is necessarily implied. However, it is not necessary to discuss the question of the power to sell or lease, or in whom such power is vested, because an unlimited gift of the proceeds vests in the beneficiaries an absolute estate in the corpus from which the proceeds arise: Carlyle v. Cannon, 3 Rawle, 489; Roberts's App., 59 Pa. 70; France's Est., 75 Pa. 220; Beilstein v. Beilstein, 194 Pa. 152; Duffy's Est., 209 Pa. 390. In Christy v. Christy, supra, no power to sell the coal was given to anyone and the reservation of the coal from the surface of the farm devised to Agnes appeared only by implication, yet it was held that Agnes only took the title to the surface of the farm and that the coal passed to the devisees as tenants in common, or in severalty, under the will, because it was the manifest in-

tention of the testator to thus dispose of his property. The same rule applies to the case at bar. Here we think it was the manifest intention of the testatrix to give the proceeds of the coal, gas and oil to her four children, share and share alike, and this is equivalent to a devise of the absolute estate in these minerals to them. In this view the estate must be regarded as vested and not contingent. When the contingency is annexed to the payment or enjoyment of the gift and not to the substance the legacy will be construed as vested: Manderson v. Lukens, 23 Pa. 31; Pennock v. Eagles, 102 Pa. 290. This case is not free from difficulty, and very good reasons can be and have been given to sustain the view pressed upon us by appellants, but the conclusion reached is the only one which gives force and effect to every part of the will. It does no violence to the language used; it makes the will consistent in all of its parts; and, in our opinion, carries out the manifest intention of the testatrix.

In conclusion it may be added that the rule so strongly insisted upon by appellants that an absolute estate will not be cut down by subsequent provisions of doubtful import has no controlling force under the facts of this case. As we view the will as a whole the intention of the testatrix was to give her son Harmon and his children only the surface of the farm in question and not the minerals underlying the same. This being the case, the devise was not cut down by the disposition made of the minerals under item nine.

Judgment affirmed.