## Daugherty et al. *v.* Daugherty et al.

*Decedents' Estates—Wills—Interpretation.*

The word "if" in a will will be construed to mean "when," in order to carry out the apparent intention of the testator.

A testator devised a farm to his son subject to the payment of certain specific legacies. After directing his son to see that "the above bequests is all satisfied also to pay all doctor bills and funeral expenses and to put up a tombstone and pay for the same," the will provided that "if ever the mineral and coal is sold from under the within mentioned farm, I want my son to have the one third of the whole amount and the balance to my other heirs the two-thirds to be divided amongst them each and each alike."

*Held*: That the testator devised to his son a fee simple in the surface of his farm, and disposed of the coal and minerals underlying it, one-third to his son, and two-thirds to his other heirs.

*Release—Construction.*

A general release, which recited as the moving cause of its execution the payment of certain pecuniary legacies, will not be extended so as to operate as a conveyance of the releasors' interests in real estate.

Argued April 13, 1927. Appeal No. 161, April T., 1927, by plaintiffs from decree of C. P. Jefferson County, Sitting in Equity, April T., 1922, No. 3, in the case of William Daugherty and Martha Daugherty, his wife; Elizabeth Smith, widow; Stewart Daugherty and Clara Daugherty, his wife; Marjorie Penfield and R. F. Penfield, her husband; Finley Daugherty and Lizzie Daugherty, his wife; Sarah Robinson and Paul J. Robinson, her husband; J. C. Boner and Willena

Boner, his wife, v. J. D. Daugherty, single; Mary Daugherty, Mabel Patterson and L. E. Patterson, her husband; Robert F. Daugherty, single; Eva Calhoun and Walter Calhoun, her husband, and Wade Daugherty, single; Clyde Shick, single and E. M. Shick. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Bill in equity for partition. Before CORBET, P. J., and DARR, P. J.

The facts are stated in the opinion of the Superior Court.

The Court dismissed the bill. Plaintiffs appealed.

*Error assigned,* among others, was the decree of the Court.

*W. N. Conrad,* for appellants.

*Raymond E. Brown,* for appellees.

OPINION BY KELLER, J., July 8, 1927:

Two questions are raised by this appeal: (1) Whether the will of James Daugherty vested in the plaintiffs title to two-thirds of all the mineral and coal in and under his farm in Washington Township, Jefferson County; and, (2) if so, whether the general release from the plaintiffs to Thomas Daugherty operated as a conveyance of this estate.

(1) We agree with the learned court below that the first question is governed by the decision of the Supreme Court in Hyde v. Rainey, 233 Pa. 540. While the interpretation of wills must of necessity depend on the language of each particular will, yet where practically the same language, used under practically similar circumstances, has been construed by the Supreme Court, the interpretation so placed on this language by that court will be adopted by us unless it

is clearly apparent from other parts of the will under consideration that such construction is inapplicable.

In the case of Hyde v. Rainey, supra, the testatrix "bequeathed" to her son Harmon H. Rainey for life, with remainder to his children, the farm in Nottingham Township, Washington County, on which she resided, subject to the payment of certain pecuniary legacies; and subsequently provided: "It is my will that if the farm on which I reside shall be leased for the purpose of mining for coal, gas or oil that the proceeds of the lease shall be divided between my four children, viz: Sarah E. Hyde, Lydia A. Bebout, Maria J. McGregor and Harmon H. Rainey, share and share alike." The will was inartistically drawn by a minister of the gospel, but the court held that "it was the manifest intention of the testatrix to give the proceeds of the coal, gas and oil to her four children, share and share alike, and this is the equivalent to a devise of the absolute estate in these minerals to them." This necessarily resulted in a severance of the minerals from the surface and in reducing the estate in the land devised to Harmon H. Rainey and his children—amounting together to a fee—to such an estate in the surface of the land only.

In the present case the will was crudely drawn, probably by the testator himself, two days before his death. By it he gave to his son Thomas Daugherty his farm in Washington Township, Jefferson County, —describing it—, to him, his heirs and assigns forever —subject to the payment of certain specific legacies and bequests to his other children and a grandson. After directing his son Thomas to see that "the above bequests is all satisfied also to pay all doctor bills and funeral expenses and to put up a tombstone and pay for the same," the will continues, "if ever the mineral and coal is sold from under the within mentioned farm I want my son Thomas F. Daugherty to

have the one third of the whole amount and the balance
to my other heirs the two-thirds to be divided amongst
them each and each alike.''

In both cases we have an apparent devise of the
farm in fee, followed by a different gift of the proceeds
of coal and other minerals underlying the farm ''if''
or ''if ever'' the minerals are sold or the farm is leased
for the purpose of mining for coal, etc. The Supreme
Court held in the Rainey case that the word ''if'' was
used in the sense ''when,'' and that the will passed
an absolute, and not a conditional, right to the pro-
ceeds, carrying with it an estate in the minerals them-
selves. Everything said in the Rainey case leading to
those conclusions is equally applicable here, and war-
rants a like result. We conclude therefore that the
testator devised his son Thomas a fee simple in the
surface of his farm and disposed of the coal and
minerals underlying it, one-third to Thomas and two-
thirds to his other heirs.

(2) We are unable to agree with the learned court
below that the release given by the other legatees to
Thomas Daugherty operated as a conveyance to him
of their estates in the coal and other minerals granted
them under the will. It is true that the release is
very broad in its terms,—apparently a general release
from a form book—, but it will be noted that in the
preamble setting forth the portion of the testator's
will which was the moving cause for its preparation
and execution, no mention is made of the clause grant-
ing to the heirs, other than Thomas, two-thirds of the
coal and minerals, while the specific legacies subject
to which the devise of the farm was made to Thomas
are recited at length, to wit: To Elizabeth Daugherty
(a daughter) $500, one bed and bedding and one cow;
To James Boner (a grandson) $200; To Stewart
Daugherty (a son) $200; To Finley Daugherty (a son)
$200; To Margery and Sarah Daugherty (daughters)
$50 each.

And though the above sums and legacies were acknowledged to be "in full satisfaction and payment of all sums of money and legacies owing, payable or belonging to [them] for or on account of the gifts and devises mentioned in said last will and testament," the release discharges the said Thomas Daugherty from the "payment of the moneys and legacies mentioned in said will," and should not be extended beyond what was its plain purpose and intent. It is not averred that Thomas Daugherty paid to the other heirs anything more than the specific legacies given them by their father's will, subject to the payment of which his fee simple in the surface of the farm had been devised. They were the only matters recited in the release as requiring payment by Thomas and in our opinion it would be doing violence to the intention of the parties to extend its operation and effect so as to include a conveyance of their estate in the coal and minerals in place. "When [a release] contains a particular recital, or words in any other form, showing that a specific object, duty or right only, was intended by the parties to be embraced, or that it was the moving cause for executing the release, subsequent general words therein will be qualified and restrained by the previous particular recital or specifications": Shepley v. Lytle, 6 Watts 500, 506.

The fourth assignment of error is sustained; the decree is reversed, and the record remitted for further proceedings not inconsistent with this opinion. Costs on this appeal to be paid by appellees.